OSCN Found Document:FRY v. STATE ex rel. DEPARTMENT OF CORRECTIONS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 







 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 FRY v. STATE ex rel. DEPARTMENT OF CORRECTIONS
2017 OK 77
Case Number: 114942
Decided: 09/26/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 77, __ P.3d __

 

ADAM RAY FRY, Petitioner/Appellee,
v.
STATE OF OKLAHOMA ex rel. DEPARTMENT OF CORRECTIONS, Respondent/Appellant.

ON APPEAL FROM THE DISTRICT COURT OF CANADIAN COUNTY, 
STATE OF OKLAHOMA

HONORABLE GARY E. MILLER, TRIAL JUDGE

¶0 In 2002, Petitioner received a five year deferred sentence for rape by instrumentation from the district court in Pottawatomie County. Upon completion of this sentence in 2007, the Oklahoma Department of Corrections (DOC) informed Petitioner he would have a lifetime sex offender registration requirement. In October of 2009, the sentencing judge granted an "override" of Petitioner's lifetime registration pursuant to 57 O.S. Supp.2008, § 582.5(D). This override reduced the period of registration to fifteen years from the date of completion of his sentence. Shortly thereafter, § 582.5(D) was repealed, effective November 1, 2009. While not participating in the Pottawatomie County proceeding, DOC received the override order and did not seek relief therefrom either in the district court or on appeal. In October of 2015, Petitioner filed a petition seeking an order for deregistration because DOC would not honor the Pottawatomie County override order. Petitioner sought this relief from the district court in Canadian County where he was residing. Over the objection of DOC, the district court in Canadian County enforced the Pottawatomie County override order and ordered that Petitioner be removed from the Oklahoma Sex Offender Registry. DOC appealed and Petitioner asked this Court to retain this appeal.

APPEAL RETAINED; ORDER GRANTING PETITION FOR DEREGISTRATION
AS SEX OFFENDER & REMOVAL FROM SEX OFFENDER REGISTRY 
AFFIRMED.

Michael A. Risely, MICHAEL A. RISELY, ATTORNEY & COUNSELOR AT LAW PLLC, Oklahoma CIty, Oklahoma, for Petitoner/Appellee,

Margie Weaver, Assistant General counsel, OKLAHOMA DEPARTMENT OF CORRECTIONS, Oklahoma City, Oklahoma, for Respondent/Appellant.

REIF, J.:

¶1 In October of 2015, Adam Ray Fry (Petitioner) brought a proceeding in the district court of Canadian County for an order to "deregister" as a sex offender. Petitioner contended he was entitled to this relief based on an earlier order entered by the sentencing judge in his Pottawatomie County criminal case. In that case, Petitioner received a five year deferred sentence based on his plea to a charge of rape by instrumentation. As a consequence of this sentence, Petitioner was originally required to register as a sex offender for life. In October of 2009, however, the sentencing judge granted an "override" of Petitioner's lifetime registration requirement, pursuant to 57 O.S.Supp.2008, § 582.5(D). The sentencing judge's override order reduced the period for registration to fifteen years from the completion of his five year deferred sentence.

¶2 This override was granted over the objection of the Pottawatomie County District Attorney who represented the State of Oklahoma at the hearing on Petitioner's override request. While not participating in the override proceeding, DOC received the override order. Neither the District Attorney nor DOC sought relief from the override order in the trial court or on appeal.

¶3 The case at hand was spawned by DOC's refusal to follow the override order and its insistence that case law from this Court precludes any retroactive application of the Sex Offenders Registration Act. DOC asserts that this Court has held a sex offender's registration period is fixed by the law in effect at the time the offender becomes subject to the Act.

¶4 DOC relies primarily on two cases handed down in 2013 -- Burk v. State ex rel Department of Corrections, 2013 OK 80, 349 P.3d 545 and Cerniglia v. Oklahoma Department of Corrections, 2013 OK 81, 349 P.3d 542. The Burk case held the law in effect when the sex offender voluntarily entered Oklahoma to reside governed his registration. The Cerniglia case similarly held the law in effect at the time of sex offender's conviction controls the period of registration. DOC argues that the law-in-effect-rule of these cases implements the prohibition against retroactive application of the Sex Offenders Registration Act pronounced earlier in 2013 in Starkey v. Oklahoma Department of Corrections, 2013 OK 43, 305 P.3d 1004. DOC points out the law in effect at the time of Petitioner's Pottawatomie County sentence provided for lifetime registration. For the reasons that follow, we reject DOC's narrow reading of this case law and affirm the trial court's enforcement of the override order.

¶5 The Starkey case did not purport to prohibit the retroactive effect of every provision in the Sex Offenders Registration Act. What the Starkey case held was: "The Oklahoma Constitution prohibits the addition of sanctions imposed on those already convicted before the legislation increasing sanctions and requirements of registration were enacted." ¶ 78, 305 P.3d at ___. (Emphasis added). The override remedy provided by § 582.5(D), did not add or increase sanctions and requirements of registration. In fact, it did just the opposite.

¶6 The Legislature provided override as a remedy to lessen any unintended effects of the newly imposed assessment levels and the attendant periods of registration. More particularly, it gave a way for a sex offender to show "the risk level assessed is not an accurate prediction of the risk the offender poses." Persons subject to registration could pursue this statutory remedy any time before its repeal on November 1, 2009. As this Court observed in Burk , "the November 1, 2009, amendments eliminating the option to reduce a level assignment do not affect a proceeding already begun prior to the amendments' effective date." ¶ 9, 349 P.3d at ___. In the case at hand, the district court in Pottawatomie County granted the override relief to Petitioner ten days before the Legislature eliminated the override remedy on November 1, 2009.

¶7 Equally important is the fact that DOC admits it received the Pottawatomie County override order in 2009. DOC did not seek relief from that order, either in the district court of Pottawatomie County or on appeal. Even though the District Attorney for Pottawatomie County appeared and represented the interests of the State of Oklahoma, DOC could have asserted the same "real party in interest" status before the district court of Pottawatomie County or on appeal, as it asserted in the district court of Canadian County. The only reasonable conclusions that can be drawn from its failure to seek timely relief from the Pottawatomie County order are (1) DOC believed the District Attorney in Pottawatomie County had adequately represented the interests of the State of Oklahoma concerning Petitioner's registration requirements and (2) DOC treated the Pottawatomie County order as valid and effective to change Petitioner's risk level and period of registration. In any event, the override order is a final and binding adjudication of Petitioner's "requirements of registration," as provided in § 582.5(D).

¶8 In cases like Petitioner's case, where override relief was timely sought and granted pursuant to § 582.5(D), and neither the prosecuting District Attorney nor DOC appealed, or otherwise timely challenged the override order, DOC is required to honor and implement the "requirements of registration" adjudicated in such an order. This override relief is a statutory remedy from Legislatively prescribed registration requirements. As such, it does not offend the prohibition against retroactive application of the Sex Offenders Registration Act as pronounced in the Starkey case, even if it produces an exception to the general rule that sex offenders are subject to the registration requirements in effect at the time they become subject to the Act. Such retroactive deviation is permissible so long as it does not add or increase sanctions or requirements of registration.

APPEAL RETAINED; ORDER GRANTING PETITION FOR DEREGISTRATION
AS SEX OFFENDER & REMOVAL FROM SEX OFFENDER REGISTRY
AFFIRMED.

CONCUR: GURICH, V.C.J., KAUGER, WATT, EDMONDSON, COLBERT, and REIF, JJ.

DISSENT: WINCHESTER and WYRICK, JJ. (by separate writing).

DISQUALIFIED: COMBS, C.J.

Wyrick, J., with whom Winchester, J., joins, dissenting:

¶1 We have previously - - and repeatedly - - held that sex offenders are subject to the version of Oklahoma's Sex Offender Registration Act[1] (SORA) in effect on the date the offender became subject to the Act.[2] Because he committed his sex crime in Oklahoma, Fry became subject to SORA upon the date of his 2002 conviction for rape by instrumentation.[3] The version of SORA in effect at that time, 57 O.S.Supp.2002 § 584(H)(2), categorized Fry as an "aggravated sex offender" and required that he register as a sex offender for life. Indeed, under all versions of SORA in effect from 2002 to present, Fry qualifies as an "aggravated sex offender" who must register for life.[4] Because the majority allows Fry to deregister despite his aggravated sex offender status, I respectfully dissent.

¶2 Fry's case jumped track when DOC assigned Fry a "risk level" pursuant to a risk level system that did not exist in the 2002 version of SORA, and strayed further afield when a district court subsequently reduced that risk level pursuant to a mechanism that also did not exist in the 2002 version of SORA.[5] Finally, the district court here granted Fry's petition to deregister altogether despite his being an aggravated sex offender subject to lifetime registration under the 2002 version of SORA - - and every version since.[6] But instead of correcting these missteps, the majority countenances them by creating an exception to our well-settled rule regarding which version of SORA governs an offender's registration obligations. After today, the version of SORA in effect on the date the offender becomes subject to the Act governs his or her registration obligations unless a later version is more favorable to the sex offender.[7] "[D]eviation" from our normal rule "is permissible," we say, "so long as it does not add or increase sanctions or requirements of registration."[8] And so deviate we do.

¶3 This "heads the sex offender wins, tails the State loses" approach is justified by neither notions of retroactivity nor the doctrine of preclusion. First, we have repeatedly held that the Legislature did not intend for the 2007 level system to apply retroactively.[9] Those prior holdings were correct; there is a presumption against the retroactive application of new laws that is only overcome by express legislative declaration of retroactivity.[10] As we have previously held, the Legislature made no such declaration with regard to the level system.[11] The majority offers nothing- -nothing- -to explain what has changed between then and now that would justify this new conclusion that the 2007 level system applies retroactively.

¶ 4 The only possible explanation is that the majority believes the Ex Post Facto Clause somehow requires retroactivity.[12] It doesn't. The Ex Post Facto Clause prohibits the retroactive application of laws that increase punishment;[13] it does not concomitantly authorize or demand the retroactive application of laws that decrease punishment. Thus, when the Legislature enacts a law that either does not punish or decreases punishment, the Legislature has the discretion to either require, or not require, the retroactive application of that law. There simply is no constitutional basis for overriding the Legislature's decision to forego retroactive application of the level system.

¶5 Second, because no court has previously squarely addressed Fry's aggravated sex offender status, we are not precluded from now determining that Fry is an aggravated sex offender and thus subject to lifetime registration. The 2009 level-reduction order never mentions Fry's aggravated status, a fact recognized by the 2016 deregistration order presently on appeal,[14] and the deregistration order likewise fails to account for Fry's aggravated status in granting his petition to deregister. The fact that no court has ever directly passed on the issue of Fry's aggravated status and its mandatory lifetime registration is not surprising given that no law at any time has authorized the reduction or expunction of aggravated sex-offender status. At most, the level-override procedure in 57 O.S.Supp.2007 § 582.5(D) allowed courts to reduce a risk level assignment. But an aggravated classification is not a risk level,[15] nor is the power to reduce a risk level the same as the power to set registration obligations.[16] Registration obligations are determined by statute,[17] and for as long as those statutes have recognized the concept of an "aggravated sex offender," the persons classified as such have been required to register for life.[18] Fry's aggravated offender status is thus not a "thing adjudicated." DOC should therefore be permitted to raise Fry's aggravated status and its lifetime registration requirement as a basis for opposing Fry's deregistration request.

¶6 Given all of this, Fry's case should be resolved like Butler v. Jones ex rel. State ex rel. Oklahoma Department of Corrections.[19] In Butler, the offender pleaded guilty to two counts of sexual abuse of a minor and received two five-year deferred sentences.[20] As a result of his plea to an aggravated sex offense, the offender was also required to register under SORA for life.[21] Ten years later, the district court entered an order purporting to expunge any record of the offender's guilty plea pursuant to a procedure outlined in 22 O.S. § 991c.[22] The Legislature, however, never intended the expunction process in section 991c to apply to sex offenders and, as such, explicitly forbade such application in subsection (G) of that statute. Nevertheless, the offender then sought to use his unlawful expunction order to enjoin the DOC from requiring him to register.[23] The district court granted the injunction and, on appeal, we explained the following:

[The law in effect at the time of his plea] required a person like Butler who received "any probationary term" for a crime provided for in 10 O.S., § 7115, to be designated an "aggravated sex offender" and register under SORA for his or her lifetime. Even if deferred sentencing of a sex offender and the subsequent expungement of the offender's criminal records were lawful, which it is not and was not, this law is clear, an aggravated sex offender must register under SORA for his or her lifetime. This law was in place prior to Butler's plea and controls his SORA registration.[24]

 

In conclusion, we said that the district court "gave deference to an unlawful expungement over valid law requiring Butler to register under SORA for his lifetime."[25] But instead of perpetuating that error to the benefit of the individual in front of us, we chose to correct it, and in doing so we specifically noted our rule that offenders must register in accordance with the version of SORA in effect when they become subject to the act - - even though doing so resulted in a less favorable outcome for the offender.

 

¶7 So, what about our attitude toward aggravated sex offenders has changed in the four years since Butler? Perhaps the majority disagrees with the Legislature's determination that Fry's sex crime - - being twenty and engaging in sexual activity with his fifteen-year-old girlfriend - - warrants lifetime registration. Or perhaps there is some sympathy for Fry because his attorney failed to inform him that his guilty plea would trigger the lifetime registration requirements. None of this, however, justifies the creation of a new rule that, if applied to this aggravated sex offense, must also be applied to all others, a category of stomach-turning sex crimes that includes:

Sexual child abuse;[26]

Child sexual exploitation, including child prostitution and the creation of child pornography;[27]

Rape by an adult of a child under fourteen;[28]

 Rape of a mentally-ill or incompetent person;[29]

Rape accomplished by means of force or violence;[30] and

Forcible sodomy.[31]

Had Fry earned his "aggravated" status through one of these offenses, I suspect we would be less sympathetic to his petition. I respectfully dissent.

FOOTNOTES

[1] 57 O.S. §§ 581 et seq.

[2] Butler v. Jones ex rel. State ex rel. Okla. Dep't of Corr., 2013 OK 105, ¶¶ 6, 17, 321 P.3d 161, 165, 168; Luster v. State ex rel. Dep't of Corr., 2013 OK 97, ¶¶ 13, 16, 315 P.3d 386, 390-91; Osburn v. Okla. Dep't of Corr., 2013 OK 89, ¶ 11, 313 P.3d 926, 929-30; Cerniglia v. Okla. Dep't of Corr., 2013 OK 81, ¶ 6, 349 P.3d 542, 544-45; Burk v. State ex rel. Dep't of Corr., 2013 OK 80, ¶ 11, 349 P.3d 545, 548; Bollin v. Jones ex rel. State ex rel. Okla. Dep't of Corr., 2013 OK 72, ¶¶ 15-16, 349 P.3d 537, 542; Hendricks v. Jones ex rel. State ex rel. Okla. Dep't of Corr., 2013 OK 71, ¶ 3, 349 P.3d 531, 533; Starkey v. Okla. Dep't of Corr., 2013 OK 43, ¶ 82, 305 P.3d 1004, 1031.

[3] Cerniglia, 2013 OK 81, ¶ 6, 349 P.3d at 544-45; Osburn, 2013 OK 89, ¶ 11, 313 P.3d at 929-30.

[4] See 57 O.S.Supp.2002 § 584(H)(2) (amended by Act of Mar. 19, 2003, ch. 3, § 49, 2003 O.S.L. 13, 59); 57 O.S.Supp.2003 § 584(H)(2) (amended by Act of May 16, 2005, ch. 175, § 1, 2005 O.S.L. 813, 816; Act of June 9, 2005, ch. 465, § 9, 2005 O.S.L. 2106, 2113); 57 O.S.Supp.2005 § 584(H)(2) (amended by Act of May 9, 2006, ch. 133, § 1, 2006 O.S.L. 540, 543-44; Act of June 7, 2006, ch. 284, § 9, 2006 O.S.L. 1475, 1499); 57 O.S.Supp.2006 § 584(J)(2) (amended by Act of June 4, 2007, ch. 261, § 28, 2007 O.S.L. 1173, 1207); 57 O.S.Supp.2007 § 584(J)(2) (amended by Act of June 1, 2009, ch. 404, § 6, 2009 O.S.L. 1949, 1960); 57 O.S.Supp.2009 § 584(K)(2) (amended by Act of Mar. 3, 2010, ch. 2, § 27, 2010 O.S.L. 2, 41; Act of Apr. 19, 2010, ch. 136, § 1, 2010 O.S.L. 481, 485; Act of May 10, 2010, ch. 237, § 2, 2010 O.S.L. 855, 869; Act of June 8, 2010, ch. 407, § 1, 2010 O.S.L. 1676, 1680); 57 O.S.Supp.2010 § 584(M)(2) (amended by Act of Apr. 6, 2011, ch. 24, § 1, 2011 O.S.L. 109, 114); 57 O.S.2011 § 584(N)(2) (amended by Act of Apr. 7, 2014, ch. 24, § 1, 2014 O.S.L. 97, 102); 57 O.S.Supp.2014 § 584(N)(2) (amended 2017); Act of May 10, 2017, ch. 224, § 2, 2017 O.S.L. 673, 680 (to be codified at 57 O.S.Supp.2017 § 584(O)(2)).

[5] These level assignments and the level-override mechanism did not exist until the 2007 version of SORA. See 57 O.S.Supp.2007 § 582.5(C)-(D) (originally enacted as Act of June 4, 2007, ch. 261, § 26, 2007 O.S.L. 1173, 1200).

[6] See supra note 4.

[7] See Majority Op. ¶ 8.

[8] Id.

[9] Cerniglia, 2013 OK 81, ¶ 4, 349 P.3d at 544; Burk, 2013 OK 80, ¶ 10, 349 P.3d at 548; Starkey, 2013 OK 43, ¶ 28, 305 P.3d at 1015.

[10] Dolese Bros. Co. v. State ex rel. Okla. Tax Comm'n, 2003 OK 4, ¶ 8, 64 P.3d 1093, 1097 ("As a general rule, statutes and statutory amendments will be construed as operating prospectively unless by express declaration or necessary implication from the language used the Legislature clearly demonstrates a contrary intent. If there is any doubt, it must be resolved against retroactivity." (citing Barnhill v. Multiple Injury Trust Fund, 2001 OK 114, ¶ 16, 37 P.3d 890, 898; Houck v. Hold Oil Corp., 1993 OK 166, ¶ 16, 867 P.2d 451, 457)); Good v. Keel, 1911 OK 264, ¶ 4, 116 P. 777, 777 ("It is a rule of statutory construction that all statutes are to be construed as having a prospective operation unless the purposes and intention of the Legislature to give them a retrospective effect is expressly declared, or is necessarily implied from the language used. In every case of doubt the doubt must be resolved against the retrospective effect." (citation omitted)).

[11] Cerniglia, 2013 OK 81, ¶ 4, 349 P.3d at 544; Burk, 2013 OK 80, ¶ 10, 349 P.3d at 548; Starkey, 2013 OK 43, ¶ 28, 305 P.3d at 1015.

[12] See Majority Op. ¶ 5 ("'The Oklahoma Constitution prohibits the addition of sanctions imposed on those already convicted before the legislation increasing sanctions and requirements of registration were enacted.' The override remedy provided by § 582.5(D), did not add or increase sanctions and requirements of registration. In fact, it did just the opposite!" (quoting Starkey, 2013 OK 43, ¶ 78, 305 P.3d at 1030)); id. ¶ 8 ("As such, it does not offend the prohibition against retroactive application of the Sex Offenders Registration Act as pronounced in the Starkey case, even if it produces an exception to the general rule that sex offenders are subject to the registration requirements in effect at the time they become subject to the Act. Such deviation is permissible so long as it does not add or increase sanctions or requirements of registration.").

[13] Okla. Const. art. II, § 15; Starkey, 2013 OK 43, ¶ 37, 305 P.3d at 1018 ("It has been the rule in Oklahoma that a law is within the protection of the [Ex Post Facto Clause] when it inflicts a greater punishment than the law annexed to the crime at the time it was committed or alters the situation of [the] accused to his disadvantage." (internal quotation marks and brackets omitted) (quoting Spitznas v. State, 1982 OK CR 115, ¶ 16, 648 P.2d 1271, 1276)).

[14] ROA, p.56, Order ¶ 5, at 2 ("[T]he Order of the Honorable Douglas L. Combs does not address the aggravated designation of Petitioner.").

[15] See, e.g., 57 O.S.Supp.2007 § 583(C)(3) (distinguishing persons given a "numeric risk level" from persons "classified as a habitual or aggravated sex offender").

[16] See, e.g., 57 O.S.Supp.2007 § 582.5(D) (authorizing a court to override a risk level but nowhere authorizing a court to determine independently an offender's registration obligations).

[17] See, e.g., 57 O.S.Supp.2007 §§ 583(C), 584(J)(2).

[18] See supra note 4 and accompanying text; see also Act of June 8, 1999, ch. 366, § 3, 1999 O.S.L. 1504, 1508 (adding the classification of "aggravated sex offender" for the first time); 57 O.S.Supp.1999 § 584(H)(2) (amended by Act of June 6, 2000, ch. 349, § 4, 2000 O.S.L. 1691, 1704); 57 O.S.Supp.2000 § 584(H)(2) (amended by Act of Apr. 10, 2001, ch. 51, § 2, 2001 O.S.L. 451, 455); 57 O.S.2001 § 584(H)(2) (amended by Act of Feb. 28, 2002, ch. 20, § 3, 2002 O.S.L. 55, 59; Act of Apr. 29, 2002, ch. 153, § 2, 2002 O.S.L. 523, 528; Act of May 9, 2002, ch. 235, § 2, 2002 O.S.L. 805, 816).

[19] 2013 OK 105, 321 P.3d 161.

[20] Id. ¶ 1, 321 P.3d at 163.

[21] Id. ¶ 6, 321 P.3d at 165 (citing 57 O.S.Supp.1999 § 584(H)(2)).

[22] Id. ¶ 1, 321 P.3d at 163.

[23] Id. ¶ 2, 321 P.3d at 163-64.

[24] Id. ¶ 6, 321 P.3d at 165 (emphasis added).

[25] Id. ¶ 17, 321 P.3d at 168.

[26] 21 O.S. § 843.5(E).

[27] Id. § 843.5(H).

[28] 21 O.S. § 1114(A)(1).

[29] Id. § 1114(A)(2).

[30] Id. § 1114(A)(5).

[31] 21 O.S. § 888.

For a complete list of aggravated sex offenses, see Act of May 10, 2017, ch. 224, § 2, 2017 O.S.L. 673, 680 (to be codified at 57 O.S.Supp.2017 § 584(O)(2)), listing "Section 843.5 of Title 21 of the Oklahoma Statutes, if the offense involved sexual abuse or sexual exploitation as these terms are defined in Section 1-1-105 of Title 10A of the Oklahoma Statutes, Section 885, 888, 1111.1, 1114 or 1123 of Title 21 of the Oklahoma Statutes."






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1982 OK CR 115, 648 P.2d 1271, SPITZNAS v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1993 OK 166, 867 P.2d 451, 65 OBJ 23, Houck v. Hold Oil Corp.
Discussed
 2001 OK 114, 37 P.3d 890, 72 OBJ 3688, BARNHILL v. MULTIPLE INJ. TRUST FUND
Discussed
 2003 OK 4, 64 P.3d 1093, DOLESE BROS. CO. v. STATE EX REL. OKLAHOMA TAX COMM.
Discussed
 2013 OK 43, 305 P.3d 1004, STARKEY v. OKLAHOMA DEPARTMENT OF CORRECTIONS
Discussed at Length
 2013 OK 71, 349 P.3d 531, HENDRICKS v. JONES
Discussed
 2013 OK 72, 349 P.3d 537, BOLLIN v. JONES
Discussed
 2013 OK 80, 349 P.3d 545, BURK v. STATE ex rel. DEPT. OF CORRECTIONS
Discussed at Length
 2013 OK 81, 349 P.3d 542, CERNIGLIA v. OKLAHOMA DEPT. OF CORRECTIONS
Discussed at Length
 2013 OK 89, 313 P.3d 926, OSBURN v. OKLAHOMA DEPT. OF CORRECTIONS
Discussed at Length
 2013 OK 97, 315 P.3d 386, LUSTER v. STATE ex rel. DEPT. OF CORRECTIONS
Discussed
 2013 OK 105, 321 P.3d 161, BUTLER v. JONES ex rel. STATE ex rel. DEPT. OF CORRECTIONS
Discussed at Length
 1911 OK 264, 116 P. 777, 29 Okla. 325, GOOD v. KEEL
Discussed
Title 10. Children
 Cite
Name
Level

 10 O.S. 7115, Renumbered as 21 O.S. § 843.5 by Laws 2009, HB 2028, c. 233, § 207, emerg. eff. May 21, 2009
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 888, 21 O.S. 888, Forcible Sodomy
Cited
 21 O.S. 1114, Rape in First Degree - Second Degree
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 991c, Deferred Sentence
Cited
Title 57. Prisons and Reformatories
 Cite
Name
Level

 57 O.S. 583, Procedure for Registration
Discussed
 57 O.S. 582.5, Sex Offender Level Assignment Committee
Discussed at Length
 57 O.S. 581, Short Title
Cited
 57 O.S. 584, Information Required on Registration - Form - Notice of Address Change - Maintenance of Files - Availability
Discussed at Length