2013 OK 105

**Jerry Dale BUTLER, Petitioner/Appellee,**

v.

**Justin JONES ex rel., STATE of Oklahoma ex rel., OKLAHOMA DEPARTMENT OF CORRECTIONS, Respondent/Appellant.**

No. 108820.

Supreme Court of Oklahoma.

Dec. 17, 2013.

Rehearing Denied March 10, 2014.

James Alexander Drummond, Norman, Oklahoma, for Petitioner/Appellee.

Larry Foster, II, Oklahoma Department of Corrections, Oklahoma City, Oklahoma, for Respondent/Appellant.

COMBS, J.

¶1 On June 28, 2000, Petitioner/Appellee, Jerry Dale Butler (hereinafter "Butler") pled guilty to two counts of "Sexual Abuse of a Minor Child" pursuant to 10 O.S., § 7115 in Sequoyah County, Oklahoma and received two five-year deferred sentences which ran consecutively.[1] Sometime thereafter, Butler began registration under the Sex Offenders Registration Act, 57 O.S., § 581 et seq. (hereinafter "SORA").[2] On April 1, 2010, the district court in Sequoyah County issued an order expunging Butler's plea from the record in accordance with 22 O.S., § 991c, thereby deleting all references to his name from the docket sheet, deleting the public index of the filing of the charge, and providing no information concerning the confidential file shall be revealed or released without order of a judge or district court.

¶2 On June 18, 2010, Butler filed a Petition for Injunction to permanently enjoin the

---

1. The Appellant alleges in its Brief in Chief that Butler pled guilty. The record does not otherwise reflect if he pled guilty or nolo contendere; the Order Expunging Court Records, dated April 8, 2010, only indicates he entered into a plea agreement. Regardless, for purposes of 22 O.S., § 991c, a deferred sentence may be made upon a verdict or plea of guilty or plea of nolo contendere.

2. The record does not reflect the exact date Butler began registration under SORA.

Respondent/Appellant, Justin Jones ex rel., State of Oklahoma ex rel., Oklahoma Department of Corrections (hereinafter "Department") from requiring him to continue registering under SORA. He argued requiring him to register violates his rights to equal protection of the laws and to due process of law "under the Constitutions of the United States, Amendments V and XIV, and of the State of Oklahoma, Art. 2, §§ 2 and 7, and Article 5, § 59." His main and most developed argument is his equal protection challenge. He alleged 57 O.S., § 582(E) violates his right to equal protection because it treats persons with expunged records in Oklahoma differently from persons whose records were expunged in other states. Subsection E of § 582 was added in 2009 and provided:

E. The provisions of the Sex Offenders Registration Act shall not apply to any such person who has received a criminal history records expungement for a conviction in another state for a crime or attempted crime which, if committed or attempted in this state, would be a crime or an attempt to commit a crime provided for in any said laws listed in subsection A of this section.

2009 Okla. Sess. Laws c. 404, § 2 (eff.Nov.1, 2009).

Butler also asserted § 582(E) offended Article 5, § 59 of the Oklahoma Constitution which concerns special laws and he is being denied due process of the law available to persons whose criminal history records were expunged in other states. He asserted there is no legitimate state purpose for denying Oklahoma defendants in deferred sentence cases the same privilege as that accorded to citizens of Oklahoma whose criminal history records were expunged in any of the other states.

¶ 3 On July 13, 2010, the Department filed a Motion to Dismiss arguing Butler's constitutional challenges should be denied because his deferred sentence and expungement were unlawful. The Department cites to "22 O.S. § 991c (G), HB 2711, c. 6, § 5, emerg. Eff. March 20, 2000," the law in effect when Butler pled, which provided:

G. The deferred judgment procedure described in this section shall not apply to defendants who plead guilty or nolo contendere to a sex offense. The term "sex offense" shall not include a violation of paragraph 1 of subsection A of Section 1021 of title 21 of the Oklahoma Statutes.

The Department further asserted, § 582(E) rationally and legitimately excludes persons with expungements in another state because no record of the offense exists to support a requirement to register under SORA.

¶ 4 On September 9, 2010, the district court entered its order finding Butler had fully complied with his deferred sentences and his records had been fully expunged. The court found there exists no rational basis behind 57 O.S., § 582(E)'s discrimination against deferred judgments expunged in Oklahoma from those expunged in other states. The court emphasized that the amendment to 22 O.S., § 991c (G), March 20, 2000, which it determined prohibited granting a deferred judgment to a person pleading guilty to a sex offense, took effect only **"three months and eight days"** before Butler pled. It found:

under this cases's [sic] **unusual and narrow circumstance,** where the deferred sentence which may have violated § 991(c) [sic] (G) has nonetheless been served and discharged, requiring Mr. Butler now to register denies him equal protection of the law under the **Sixth Amendment** to the Constitution of the United States and under **Art. 5, § 59,** Oklahoma Constitution. (Emphasis added).

The district court did not address Butler's due process argument nor did it specifically address his claim 57 O.S., § 582(E) was a special law. The court granted a permanent injunction against the Department and ordered the Department to remove Butler from the SORA registry. On October 14, 2010, the Department appealed.

### STANDARD OF REVIEW

¶ 5 Issues of a statute's constitutional validity, construction and application are questions of law to be reviewed *de novo. Gilbert v. Security Finance Corp. of Oklahoma, Inc.,* 2006 OK 58, ¶ 2, 152 P.3d 165, 171. On appeal, this Court assumes "plenary

independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hospital Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. The Department also asserts the trial court abused its discretion. The Department cites *Steltzlen v. Fritz*, 2006 OK 20, ¶ 20, 134 P.3d 141, 147, which found "[t]o reverse the trial court on grounds of abuse of discretion, it must be found that the trial court made clearly erroneous conclusions and judgment, against reason and judgment."

## ANALYSIS

¶ 6 On June 28, 2000, Butler pled guilty to two counts of sexual abuse of a minor child, pursuant to 10 O.S., § 7115. Effective, November 1, 1999, over eight months **prior** to his plea, 57 O.S., § 584(H)(2) was enacted and provided as follows:

> 2. On or after November 1, 1999, **any person who** has been convicted of a crime or an attempt to commit a crime, **received a suspended sentence or any probationary term for a crime provided for in Section 7115 of Title 10 of the Oklahoma Statutes,** if the offense involved sexual abuse or sexual exploitation as these terms are defined in Section 7102 of Title 10 of the Oklahoma Statutes, Section 885, 888, 1111.1, 1114 or 1123 of Title 21 of the Oklahoma Statutes shall be subject to all the registration requirements of this act and **shall be designated** by the Department of Corrections **as an aggravated sex offender. An aggravated sex offender shall be required to register for the lifetime of the aggravated sex offender.**

HB 1390, 1999 Okla. Sess. Laws c. 336, § 3 (eff. Nov.1, 1999).

█ This amendment required a person like Butler who received "any probationary term" for a crime provided for in 10 O.S., § 7115, to be designated an "aggravated sex offender" and register under SORA for his or her lifetime. Even if deferred sentencing of a sex offender and the subsequent expungement of the offender's criminal records were lawful, which it is not and was not, this law is clear, an aggravated sex offender must register under SORA for his or her lifetime. This law was in place prior to Butler's plea and controls his SORA registration.

█ ¶ 7 In his Response Brief, Butler alleged his plea agreement was a contract and both sides kept their end of the bargain until he was required to register under SORA. He claimed it was a violation of due process to require him to register when his case was dismissed pursuant to a plea bargain. However, the plea agreement was not made part of the record in this case and we have no way of knowing its contents. Regardless, the plea agreement could not bargain away what the law required at the time of Butler's plea. As mentioned, over eight months prior to his plea, 57 O.S., § 584(H)(2) required "aggravated" sex offenders to register under SORA for life. **This is not something that could be bargained away by a later plea agreement.**

¶ 8 The district court misinterpreted the significance of the Department's citation to the March 20, 2000, version of 22 O.S., § 991c. The district court placed great weight on the misconception that this version was the one that prohibited deferred sentences from being granted to sex offenders. It then found this prohibition had only been in existence for "three months and eight days" prior to Butler's plea. It determined because of the close proximity of the amendment to Butler's plea this case presented an "unusual and narrow circumstance."

¶ 9 The March 20, 2000, version of 22 O.S., § 991c, cited by the Department, was the latest incarnation of the law in effect at the time of Butler's plea. The Department was only being diligent in citing the relevant version of the law. That version, however, did not create the prohibition on granting deferred sentences to sex offenders as the district court mistakenly found and Butler continues to assert on appeal. The March 20, 2000, version was only part of the Legislature's annual *duplicate sections bill* whereby it merged two versions of § 991c passed during the 1999 regular and extraordinary legislative sessions; neither of which amended subsection G.[3] The prohibition on granting

3.  HB 2711, 2000 Okla. Sess. Laws c. 6, § 5, (emerg. March 20, 2000) merged the provisions

deferred sentences to sex offenders found in subsection G of 22 O.S., § 991c was enacted in 1993, nearly **seven years prior** to Butler's plea.[4]

¶ 10 After concluding the facts of this case presented an "unusual and narrow circumstance," the court then found 57 O.S., § 582(E) denied Butler "equal protection of the law under the Sixth Amendment[5] to the Constitution of the United States and under Art. 5, § 59[6], Oklahoma Constitution." However, Butler's argument concerning equal protection was based upon the Fourteenth Amendment[7] to the United States Constitution and upon his interpretation of the Oklahoma Constitution, Article 2, §§ 2[8] and 7[9], not the Sixth Amendment which concerns the rights of an accused in criminal prosecutions. Article 5, § 59, of the Oklahoma Constitution also concerns only "special laws" and not equal protection of the law. Butler made an argument in his Petition for Injunction that 57 O.S. § 582(E) was a special law which offended the Oklahoma Constitution. However, that issue was not discussed in any meaningful way in the order which is before us on appeal. The only mention by the district court of article 5, § 59 of the Oklahoma Constitution appears to be in its erroneous interpretation that it represented Oklahoma's version of the Equal Protection Clause.

¶ 11 The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates no state "deny to any person within its jurisdiction the equal protection of the laws."[10] The Oklahoma Constitution does not contain an equal protection provision like the federal Equal Protection Clause; however, this Court has identified a functional equivalent in our due process section.[11] Although not an absolute guarantee of equality of operation or application of state legislation, the Equal Protection Clause's purpose is to safeguard against ar-

---

of 22 O.S. Supp.1999, § 991c, as last amended by 1999 Okla. Sess. Laws c. § 359, 1, with 22 O.S. Supp.1999, § 991c, as last amended by 1st Extraordinary Session, 1999 Okla. Sess. Laws c. 4, § 27, and repealed the former version. Neither of these merged versions amended subsection G of Section 991c.

4. HB 1727, 1993 Okla. Sess. Laws c. 166, § 2 (eff.Sept.1, 1993), added subsection G to 22 O.S., § 991c. It provided, "G. The deferred judgement [sic] procedure described in this section shall not apply to defendants who plead guilty or nolo contendere to a sex offense."

5. U.S. Const. amend. VI. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

6. Okla. Const. art. 5, § 59. Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted.

7. U.S. Const. amend. XIV, § 1. Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; **nor deny to any person within its jurisdiction the equal protection of the laws.** (Emphasis added).

8. Okla. Const. art. 2, § 2. All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry.

9. Okla. Const. art. 2, § 7. No person shall be deprived of life, liberty, or property, without due process of law.

10. U.S. Const. amend. XIV, § 1. When called upon to analyze a case on equal protection grounds, a court will apply one of three standards of review: (a) rational basis, (b) heightened scrutiny, or (c) strict scrutiny. If the classification does not implicate a suspect class or abridge a fundamental right, the rational-basis test is used. *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 440–42, 105 S.Ct. 3249, 3254–255, 87 L.Ed.2d 313 (1985) (*noted in Gladstone v. Bartlesville Independent School District No. 30,* 2003 OK 30, ¶ 9 n. 22, 66 P.3d 442, 447 n. 22).

11. Art. 2, § 7, Okla. Const. provides: No person shall be deprived of life, liberty, or property, without due process of law. *See Gladstone v. Bartlesville Independent School District No. 30,* 2003 OK 30, ¶ 6 n. 15, 66 P.3d 442, 446 n. 15.

bitrary discrimination.[12]

¶ 12 An equal protection analysis requires strict scrutiny of a legislative classification only when such classification impermissibly interferes with the exercise of a fundamental right, such as, the right to vote, right of interstate travel, rights guaranteed by the First Amendment, or right to procreate, or operates to the peculiar disadvantage of a suspect class, such as, one based upon alienage, race, or ancestry.[13] Unless a classification warrants some form of heightened review, the Equal Protection Clause only requires the classification rationally further a legitimate state interest.[14] Sex offenders are not members of a suspect class nor is there a fundamental right at stake in this case.[15] Therefore, the lower threshold, identified as the rational-basis test, is the correct standard for our analysis.

¶ 13 When searching for a rational basis we must be aware "that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Classifications are not measured by whether they discriminate, but by whether they discriminate impermissibly or invidiously. *Ross v. Peters,* 1993 OK 8, 20, 846 P.2d 1107, 1117. We have found, "[w]here a legitimate state purpose is achieved via a statutory means that does not violate the relatively relaxed standard of minimal rationality, the classification scheme passes constitutional muster." *Ross* at 20, 846 P.2d 1107.

¶ 14 Title 57 O.S., § 582(E), was enacted in 2009, approximately sixteen years after deferred sentencing of sex offenders had been abolished under 22 O.S. § 991c (G). Subsection E merely provides the provisions of SORA are not applicable to a person who has received a criminal history records expungement for a conviction in another state of an otherwise SORA applicable crime. The Legislature does not expressly state its reason for this provision. However, we have previously found the Equal Protection Clause, for a rational-basis review, does not demand a legislature articulate its purpose or rationale; where there is none, this Court will hypothesize the reason. *Ross* at 21, 846 P.2d 1107. We find the Department correctly interpreted the reason for 57 O.S., § 582(E)'s enactment. The Department asserts "the State has a rational basis to not embark upon the unduly burdensome and potentially impossible task of trying to ascertain information upon which to classify those with out of state expungements."

¶ 15 The reason 57 O.S., § 582(E) does not include expungement of criminal records for sex crimes committed in Oklahoma is clear; deferred sentencing of sex offenders which could lead to an expungement pursuant to 22 O.S., § 991c was abolished approximately sixteen years before § 582(E)'s enactment. Since its prohibition in 1993, it is presumed law enforcement officials will have access to the records of all sex offenders who enter a plea in Oklahoma. The same cannot be said for the records of sex offenders who committed their offense in another state; especially when other states may continue to allow expungement of sex offender records.

¶ 16 Legislative enactments are strongly presumed to be constitutional. *Jacobs Ranch, L.L.C. v. Smith,* 2006 OK 34, ¶ 18, 148 P.3d 842, 848. All that is required to satisfy the minimal rationality test is that the Legislature could conceivably have believed that 57 O.S., § 582(E) would serve the legitimate purpose of preventing the overburdening of the Department by requiring it to make vain attempts to procure expunged out-of-state records. *See Ross* at 21, 846 P.2d 1107. Here we cannot say the provisions of § 582(E) are so irrational as to fail constitutional scrutiny.

---

**12.** *Ross v. Peters,* 1993 OK 8, 17, 846 P.2d 1107, 1114.

**13.** *Gladstone v. Bartlesville Independent School District No. 30,* 2003 OK 30, ¶ 9, 66 P.3d 442, 447.

**14.** *Ross* at 17, 846 P.2d 1107.

**15.** *See Hines v. Jenks,* 89 Fed.Appx. 189, 191 (10th Cir.2004) (unpublished) (Citing *Lustgarden v. Gunter,* 966 F.2d 552, 555 (10th Cir.1992)).

CONCLUSION

¶ 17 We find the district court gave deference to an unlawful expungement over valid law requiring Butler to register under SORA for his lifetime. The district court reached an erroneous conclusion that Butler's case presented an "unusual and narrow circumstance" which justified it ignoring valid and existing law. We also find the provisions of 57 O.S., § 582(E) do not deny Butler equal protection of the law. At the time of Butler's plea, the law required a person who received any probationary term for a crime provided for in 10 O.S., § 7115, if the offense involved sexual abuse, to be designated an "aggravated" sex offender and to register under SORA for life. Requiring Butler to register under SORA based upon the law in effect at the time of his plea is consistent with our recent holding in *Cerniglia v. Oklahoma Dept. of Corrections,* 2013 OK 81, —— P.3d ——. We reverse the district court's order granting a permanent injunction against the Department and require the district court to order Butler's registration under SORA be reinstated for his lifetime because of his "aggravated" sex offender status.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION**

¶ 18 ALL JUSTICES CONCUR.